**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
MR. S., ET AL.,                :
                               :
     Plaintiffs,               :
                               :
v.                             :     Civ No. 3:08CV0834(AWT)
                               :
RACHEL WEBB, ET AL.,           :
                               :
     Defendants.               :
------------------------------x
```

**RULINGS ON MOTIONS TO DISMISS**

<u>Pro se</u> plaintiffs Mr. and Mrs. S (the "S's") filed the instant action on June 2, 2008, on behalf of both themselves and their children S-1 and S-2 against Rachel Webb and the following state defendants: the State of Connecticut; the Judicial Branch; the Office of the Attorney General; the Department of Public Safety; the Department of Children and Families ("DCF"); Connecticut Superior Court Judge Stuart Bear; Connecticut Superior Court Judge Kevin Randolph; Attorney General Richard Blumenthal; Assistant Attorneys General ("AAG") Jessica Torres, "Mackenzie Hall", Kelly James, and John/Jane Does 1-5; DCF employees Susan Hamilton, Allison Karimi, Nola Sharp Looney, Dawn H. Jackson, Jennifer Davis, Vanessa Hudson, Lisa Lambruno, and John/Jane Does 1-9; State Police officers More, Sutherland, Richard Piaseczynski, and John Does 1-5; and Attorney Karen Damboise.

Both Rachel Webb and the state defendants have filed motions

to dismiss.  For the reasons set forth below, the court is
granting the motions.

## II. <u>FACTUAL BACKGROUND</u>

The factual background is based to a large degree upon the
findings of the Connecticut Superior Court on February 1, 2008.
<u>See</u> <u>generally</u> <u>In re Michelle S.</u>, No. W10CP07015304, 2008 WL
544653, (Conn. Super. Ct., February 1, 2008).

On or about September 11, 2007, the Commissioner of DCF
through her agents filed a petition in the Superior Court for
Juvenile Matters alleging that S-1 had been denied proper care
and attention, physically, educationally, emotionally, and
morally, and also alleging that S-1 had been permitted to live
under conditions, circumstances or associations injurious to her
well being.  During the evening and morning hours of September 1
and 2, 2007, S-1 stated that she had been sexually molested by
her father, including genital to genital contact, from the time
she was five years old until she was 11.  The statements were
made by S-1 to a neighbor, Rachel Webb ("Webb"), to the
Connecticut State Police, and to a DCF Hotline investigative
social worker.  In her statement to the DCF investigator, S-1
detailed the history and nature of abuse.  Following the
disclosure, an order of temporary custody was entered, and S-1
was removed from the home.  For a time, she lived with her
paternal aunt.  She later was permitted to return home on the

-2-

condition that her father not reside in the house or have contact with her.

Following S-1's statements to Webb, to the State Police, and to the DCF investigator, and after her removal from the home, Mrs. S told S-1 that her disclosures would ruin the family.  S-1 recanted her statements about sexual abuse.

Judge Foley of the Connecticut Superior Court held a hearing on DCF's petition and heard from many witnesses over three days of testimony.  The witnesses included State Police officers, DCF social workers, neighbors, and other acquaintances of the S family, including Webb.  The parents were present and were represented by counsel.  S-1 was represented in court at all times by an attorney and a guardian ad litem.

Based upon the documentary evidence, and the testimony of the witnesses at the hearing, Judge Foley found by a fair preponderance of the evidence that S-1 had been neglected.  The court ordered S-1 into the custody of DCF.  After the parents requested that the Superior Court disqualify itself, several other judges, and Assistant Attorney Generals, the Superior Court transferred the case to the Child Protection Session in Middletown for disposition of all further matters.  See In re Michelle S., No. W10CP07015304, 2008 WL 4378464, (Conn.Super. Ct. Aug. 4, 2008).

The S's did not appeal the Superior Court's decision, but

-3-

instead filed the instant action on June 2, 2008 on behalf of
both themselves and their children, S-1 and S-2.  In addition,
they filed an emergency motion for a hearing requesting that this
court issue an order compelling the State to show cause why S-1
was committed to DCF custody, and an emergency motion for a writ
of habeas corpus for S-1's immediate return.

This court held a status conference with the parties two
days later, and then issued an oral order denying the S's
motions.  During this time, the S's also filed a motion to stay
the ongoing child protection proceedings.

In their complaint filed in this court, the plaintiffs seek
(1) an emergency show cause hearing as to why S-1 remained in DCF
custody as well as an order that S-1 should be returned (Amend.
Compl. at ¶ 10); (2) the issuance of "an immediate habeas corpus
writ to the State of Connecticut to immediately produce S-1
before this Court so that S-1 can 'demand' in person from the
presiding Judge of this Court her fundamental constitutional
right to be with her parents . . . ." (Id. at ¶ 11); (3) "a
declaratory ruling that any and all 'demands,' 'plans,'
'rulings,' 'orders,' 'judgments,' brought upon the S's . . . be
deemed VOID . . . ." (Id. at ¶ 12); (4) an order that some of the
defendants prove that "the S's COURT is free of . . . bias, fraud
and corrupt administrators . . . ." (Id. at 36); (5) "a MANDAMUS
from this Federal Court ordering . . . [the] 'administrators' of

the State of Connecticut to 'administer the law' to the S's."
(Id. at 45);(6) compensatory damages (Id. at ¶ 13); and (7)
punitive damages. (Id. at ¶ 13).  The amended complaint consists
of a total of 21 counts and refers to over 40 defendants.

## II. <u>LEGAL STANDARD</u>

A claim is properly dismissed for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks
the statutory or constitutional power to adjudicate the claim.
<u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182, 1187 (2d
Cir. 1996).  On a Rule 12(b)(1) motion to dismiss, the party
asserting subject matter jurisdiction "bears the burden of
proving subject matter jurisdiction by a preponderance of the
evidence."  <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d
635, 638 (2d Cir. 2005).  When reviewing a motion to dismiss for
lack of subject matter jurisdiction, the court may consider
evidence outside the pleadings.  See <u>Makarova v. United States</u>,
201 F.3d 110, 113 (2d Cir. 2000).  The standards for dismissal
under Fed R. Civ. P. 12(b)(1) and 12(b)(6) are identical.  See
<u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir. 2003).

When deciding a motion to dismiss under Rule 12(b)(6), the
court must accept as true all factual allegations in the
complaint and must draw inferences in a light most favorable to
the plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).
Although a complaint "does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corporation v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. (citations omitted).  The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 1974.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" <u>Mytych v. May Dept. Store Co.</u>, 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice

-6-

may be taken." <u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

<u>Pro se</u> litigants are entitled to a liberal construction of their pleadings, which should be read "to raise the strongest arguments they suggest." <u>Green v. U.S.</u>, 260 F.3d 78, 83 (2d Cir. 2001).

## III. <u>DISCUSSION</u>

### A. Claims Against Rachel Webb

With respect to Webb, the amended complaint asserts the following: a claim for violations of 42 U.S.C. § 1983 in Count Seven; conspiracy in Count Nine; harassment in Count Ten; custodial interference in Count Eleven; reckless endangerment in Count Twelve; negligence in Count Thirteen; and intentional infliction of emotional harm in Count Fourteen.  In addition, the Complaint asserts violations of the Ninth and Fourteenth Amendments to the United States Constitution, which are alleged in Count Six and Seventeen, respectively, as well as a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") in Count Eight.

Connecticut provides statutory immunity to those who in good faith report potential abuses:

> Any person, institution or agency which, in good faith, makes, or in good faith does not make, the report pursuant to sections 17a-101a to 17a-101d, inclusive, and 17a-103 shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed and shall have the same immunity with respect

to any judicial proceeding which results from such report provided such person did not perpetrate or cause such abuse or neglect.

Conn. Gen. Stat § 17a-101e(b).  Connecticut law further provides that one who has "reasonable cause to suspect or believe that any child under the age of eighteen is in danger of being abused, or has been abused or neglected" may file a report with the Department of Children and Families.  Conn. Gen. Stat. § 17a-103. The immunity does not apply where one  "intentionally and maliciously filed false reports . . . ."  Pagliuco v. City of Bridgeport, No. 3:01 CV 836 WIG, 2005 WL 3416131, at *8 (D. Conn. Dec. 13, 2005).

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issues in a [later] suit on a different cause of action involving a party to the first action."  Allen v. McCurry, 449 U.S. 90, 94 (1980). The Second Circuit has set out the following test: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for the litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits."  Beck v. Levering, 947 F.2d 639, 642 (2d Cir. 1991)(citation omitted).

All of these requirements are satisfied here.

Judge Foley's February 1, 2008 opinion states in pertinent part:

> The court heard from many witnesses over three days of testimony. The witnesses included State Police officers, DCF social workers, neighbors, and now, former, friends. The parents were present and vigorously represented by their own private counsel. The child was represented in court at all times by an attorney and a guardian ad litem. Based upon the documentary evidence, and the credible testimony, the court makes the following findings upon a fair preponderance of the evidence.
>
> [S-1] made her disclosure to the mother of [S-1's] teenage friend, [Webb's daughter]. [S-1] felt comfortable with [Webb]. They had been friendly for nine years, [S-1] spent time at their home, they rode horses together, had parties, went to the beach together, and enjoyed the neighbor's family pool gatherings.
>
> On Labor Day weekend, [S-1] stayed over night at her friend's house. . . . [S-1] asked [Webb] to drive her home from the gathering sometime after 10 P.M. When they got in the car the casual conversation quickly turned personal. [S-1] was "clearly upset about her relationship with her father." [Webb] tried to comfort [S-1]. [S-1] told her that her father had done things to her. Her father had hurt her. She couldn't talk to her own mother about them. [S-1] became hysterical, she said "she felt dirty." That it had happened from time to time. She said she was in a lot of pain. She said the first time it happened she was alone with her father and she was in a car seat. [Webb] tried to comfort [S-1]. [Webb] testified she wished the disclosure had been made to a guidance counselor or social worker. Her testimony in court was very credible and compelling.
>
> The next day, [Webb] called a friend who also knew [S-1's] parents. She asked the friend what to do. A friend of the family who was a police officer was consulted. The recommendation was that [Webb] should go to the police station and make a written statement.

-9-

In re Michelle S., 2008 WL 544653, at *1-2.

Webb testified during the hearing before Judge Foley at which the S's were represented by counsel.  All the material allegations made against Webb in the amended complaint in this case are points the S's could have raised to persuade Judge Foley that Webb's version of events was not true.  Judge Foley found Webb credible and the findings of fact as to Webb were part of the findings that supported his conclusion, among others, that S-1 had been neglected by her parents, and the judgment that was entered was based on these conclusions.

Therefore, all claims against Webb should be dismissed because she is immune from liability.

**B. Claims Against the State Defendants**

**1. Rooker-Feldman doctrine**

To the extent that the plaintiff's claims ask this court to issue "a declaratory ruling that any and all 'demands,' 'plans,' 'rulings,' 'orders,' 'judgments,' brought upon the S's . . . be deemed VOID. . . ." (Amend. Compl. at ¶ 12),[1] those claims are barred by the Rooker-Feldman doctrine.

---

[1] The court notes that many of the defendants discussed in this section are named only in the caption of the amended complaint or are alluded to in a vague manner in the amended complaint.  To the extent that a "complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  Dove v. Fordham Univ., 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999).

Federal district courts cannot act as appellate courts for state actions.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).  In Rooker, the petitioner filed suit in district court to have a state court judgment declared void because the judgment allegedly violated the due process and equal protection clauses of the United States Constitution.  The Rooker-Feldman doctrine states:

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction.  If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.  Unless and until so reversed or modified, it would be an effective and conclusive adjudication.

Rooker, 263 U.S. at 415.

Thus, the Rooker-Feldman doctrine bars district court review of state court actions, whether the state court decision is final or interlocutory.  See Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995).  If a litigant is dissatisfied with the outcome of the state court proceeding, the litigant can only obtain federal review of the claim by appealing through the state courts and then petitioning the United States Supreme Court for a writ of certiorari.  See Johnson v. Smithsonian Inst., 189 F.3d 180, 185 (2d Cir. 1999)(internal quotations and citations omitted).

The Rooker-Feldman doctrine applies where four conditions are met: (1) the federal court plaintiff lost in state court; (2)

-11-

the federal court plaintiff complains of injuries caused by the state court judgment; (3) the federal court plaintiff seeks the district court's review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

All four of these conditions are met in this case.  First, the plaintiffs lost in Superior Court.  Their child was removed from their care and placed in DCF custody.  Second, the plaintiffs complain of injuries caused by the state court judgment, i.e. the removal of S-1 from their custody.  Third, the plaintiffs ignored their right to appeal to the Connecticut Appellate Court and commenced an action in this court seeking a ruling that the previous judicial determinations by Judge Foley be deemed void.  (See Amend. Compl. at 5, 41-43, 47.)  Thus, the S's want this court to review and reject a state court judgment. Finally, the state court's judgment committing S-1 to DCF custody was rendered on or about February 1, 2008, well before the plaintiffs filed the instant action.

The S's complaint resembles the complaint of the plaintiff in Mackenzie v. Donovan, 375 F.Supp. 2d 312 (S.D.N.Y. 2005).  In Mackenzie, the plaintiff, who brought suit against the judge who had entered a contempt order, attorneys, and others, was "effectively asking [the federal district court] to review the

-12-

state court action and rule on the propriety of [the judge's] order." Id. at 320.  This constitutes "'precisely the sort of action that Rooker-Feldman is designed to prohibit.'"  Id. (internal citations and quotations omitted).

The S's cite Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) for the proposition that "Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."  (Amend. Compl. at 7.)  The plaintiffs are correct.  Here, however, the judgment in the state court suit about which the S's complain was entered before this case was commenced.  While the plaintiffs argue that they are not asking this court to "review" the state court decisions (Amend. Compl. at 7), that is what they ask this court to do.

In their supplemental memorandum, the plaintiffs place emphasis on the fact that another Connecticut Superior Court Judge, Judge Olear, closed the pending state matter on October 17, 2008, and returned S-1 to her family.  In In re Michelle S., No. W10CP07015304A, 2008 WL 4925958, (Conn. Super. Oct. 17, 2008), the court heard testimony from nine witnesses over the course of two days, in response to a motion filed by the attorney for S-1 and a motion filed by the Mr. S.  The court concluded that "cause for commitment no longer exist[ed], as the counseling had created a family bond and greater understanding of each

-13-

other's viewpoints." <u>Id.</u> at *1.  After balancing competing

factors, the court also decided not to order protective

supervision.  <u>Id.</u> at *2.  However, the October 17, 2008 decision

of the Superior Court is consistent with the rationale of the

<u>Rooker</u>-<u>Feldman</u> doctrine, as it shows how the state remedy is

applicable and adequate.  Moreover, the October 17, 2008 decision

does not call into question the findings or analysis in the

February 1, 2008 decision because it is based on a change in

circumstances, e.g. the court found the cause for commitment no

longer existed.

## 2. The Eleventh Amendment

To the extent the plaintiffs seek declaratory and injunctive

relief against the State of Connecticut, the Judicial Branch, the

Office of the Attorney General, the Department of Public Safety,

and the Department of Children and Families, their claims are

barred by the Eleventh Amendment.  "The Supreme Court has

consistently held that the federal courts lack jurisdiction not

only over suits against a state brought by citizens of other

states, as the literal language of the Amendment provides, but

also over suits against such states brought by their own

citizens." <u>Dwyer v. Regan</u>, 777 F.2d 825, 835 (2d Cir.

1985)(citations omitted).  <u>See also</u> <u>Dube v. State University of</u>

<u>New York</u>, 900 F.2d 587, 594 (2d Cir. 1990)("This bar exists

whether the relief sought is legal or equitable"), <u>quoting</u>

Papasan v. Allain, 478 U.S. 265, 276 (1986); Cory v. White, 457 U.S. 85, 91 (1982) ("the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity"); Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("suit against the State and its [agency] is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit").

Moreover, the plaintiffs cannot recover monetary damages against those defendants acting in their official capacities. See, e.g., Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office"); Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Goonewardena v. New York, 475 F.Supp.2d 310, 329 (S.D.N.Y. 2007) ("sovereign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities").  Therefore, all claims for declaratory or injunctive relief or for money damages against these state actors are being dismissed.

### 3. Judicial Defendants are Entitled to Absolute Immunity

The plaintiffs are making claims against three state judges,

-15-

based on their rulings and other judicial actions.  "[A] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997), quoting Stump v. Sparkman, 435 U.S. 349, 359 (1978). For this reason, the claims against the judicial defendants are being dismissed.

### 4. Claims against the Attorney General and the Assistant Attorney General Defendants

The plaintiffs have made allegations against the Attorney General and Assistant Attorneys General based on their actions in connection with court proceedings.  The Second Circuit has held that in determining whether state officials are entitled to absolute immunity, it "employ[s] a functional approach, looking at the nature of the function performed, not the identity of the actor who performed it." Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006)(internal quotation omitted).  Absolute immunity is afforded to state attorneys in lawsuits involving state interests.  See Barrett v. U.S., 798 F.2d 565, 573 (2d Cir. 1986)(finding Assistant Attorney General absolutely immune from liability when "representing th[e] state as its attorney in [an] action. . . .").  Only if these defendants acted "without any colorable claim of authority" will absolute immunity be denied. Bernard v. County of Suffolk, 356 F.3d 495, 504 (2d Cir. 2004)(internal citations omitted).  Here the circumstances

alleged support only a conclusion that these defendants acted within the scope of their representation of the state's interests.  Therefore, the claims against these defendants are being dismissed.

### 5. Failure to Adequately Allege Personal Involvement by State Defendants

The State Police and the DCF defendants are also alleged to have violated federal or state constitutional rights of the plaintiffs.  To be liable, these named defendants must have been personally involved in the alleged conduct.  Personal involvement, not mere "linkage in the . . . chain of command" is critical in establishing liability for wrongful acts.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  A public official can only be liable if the official causes the harm.  See Baker v. McCollan, 443 U.S. 137, 142 (1979).  "[T]here must be some showing of personal responsibility" to support an individual capacity damages claim.
Duchesne v. Sugarman, 566 F.2d 817, 830 (2d Cir. 1977).

The S's have not alleged any specific facts to support their claims against nearly all the state defendants identified in the caption of the complaint.  Rather, the plaintiffs have made broad allegations against classes of defendants without detailing what conduct is attributable to each defendant.  Thus, the S's have failed to allege sufficient personal involvement and deprived these defendants of a meaningful opportunity to respond.  See,

e.g., Dejesus v. Tierney, 9:04-CV-298, 2006 U.S. Dist. LEXIS
22949, *22 (N.D.N.Y  Mar. 28, 2006)(dismissing claims based on
lack of personal involvement against defendants that were
"mentioned only in the caption of the complaint and in the
section in which plaintiff identifies defendants.").

The only exceptions are on pages 12 and 44 of the amended
complaint, where the S's mention Judge Foley by name in
challenging his ruling and in other parts of the amended
complaint where they reference the Attorney General by title in
claiming that he and his agents lacked probable cause to bring
the state action.  However, Judge Foley and the Attorney General
acting through Assistant Attorneys General are protected by
absolute immunity, and the plaintiffs' claims against those
defendants are being dismissed.

### 6. Claim against State Trooper Piaseczynski

The plaintiffs aver that Trooper Piaseczynski improperly
seized a firearm owned by Mr. S and allege that this conduct
violated Mr. S's Second Amendment right and due process rights.
Mr. S. demands that the State return the firearm.  (See Amend.
Compl. at 28.)

The right to keep and bear arms is a right against the
federal government, not against the States.  See District of
Columbia v. Heller, 128 S. Ct. 2783, 2843 (2008); Bach v. Pataki,
408 F.3d 75, 85 (2d Cir. 2005) (stating that whatever else the

-18-

court means by the right, they "are uniform in this interpretation."). Since Mr. S is making a claim against a state government actor, it cannot be based on the Second Amendment and the claim should be dismissed.

The plaintiff's due process claim should also be dismissed. A state actor's deprivation of a person's property interest, even if random and unauthorized, "cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy." Albright v. Oliver, 510 U.S. 266, 284 (1994). This has been expanded to include intentional conduct by state actors. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). To do otherwise would open up almost every alleged injury inflicted by "a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." See Albright, 510 U.S. at 284 (internal citations and quotations marks omitted).

Connecticut provides an adequate post-deprivation remedy. See Malapanis v. Regan, 335 F. Supp. 2d 285, 292-293 (D. Conn. 2004)(citing sections of the Connecticut General Statutes that show how the state provides a meaningful and adequate state remedy in cases such as this). These remedies are available to Mr. S. Therefore, these claims are being dismissed.

### 7.  Civil Rico Claims Against State Defendants

The S's also assert that the state defendants are liable under the Racketeer Influenced and Corrupt Organizations Act

-19-

("RICO").  In stating a claim for damages under RICO, a plaintiff must first allege seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."   Moss v. Morgan Stanley Inc. 719 F.2d 5, 17 (2d Cir. 1983), citing 18 U.S.C. § 1962(a)-(c).

The mere assertion that there is "an organized 'racket' and scheme to get the S's to pay 'homage' as well as money to attorneys and the various State agencies in the form of fees and costs for Court ordered sham 'services'. . ." (Amend. Compl. at 33) is not sufficient.  The plaintiffs have merely set forth conclusory allegations of RICO activity and these are insufficient as a matter of law to survive a motion to dismiss. See e.g., Jones v. Nat'l Commun. & Surveillance Networks, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006)(a plaintiff must provide detailed facts to support the elements of a RICO claim and "conclusory allegations are insufficient to survive a motion to dismiss RICO claims especially given the inevitable stigmatizing effect a RICO claim can have on a defendant")(internal citations and quotation marks omitted).  Accordingly, these claims are being dismissed.

**8. Conspiracy Claims against the Defendants**

The plaintiffs allege that each of the individual defendants conspired to violate the plaintiffs' rights.   (See Amend. Compl. at 36.)   "To establish a conspiracy claim, [a plaintiff] must provide a basis in fact by pleading particular overt acts performed in furtherance of the conspiracy, and a conspiracy claim must be dismissed pursuant to Rule 12(b)(6) if a plaintiff does not advance any facts establishing how the [defendants] entered willfully into an agreement to commit unlawful acts against [the plaintiff]."   Rzayeva v. United States, 492 F. Supp. 2d 60, 82-83 (D. Conn. 2007)(internal citations, quotations, and alterations omitted).   A complaint that consists of "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" will not survive a motion to dismiss. Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999)(internal citations and quotations marks omitted).

Here, the plaintiffs have not pled sufficient facts to meet this standard.   They have failed to set forth even minimal factual allegations that could support a finding that there was an agreement among any of the defendants in this case to violate the plaintiffs' rights.   Therefore, this claim is being dismissed.

**9. Supplemental Jurisdiction**

The court has dismissed all the plaintiffs' federal claims,

-21-

and there is no basis for diversity jurisdiction.  Therefore, the court declines to exercise supplemental jurisdiction over any remaining state law claims.  See, e.g., Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2005)("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## IV. CONCLUSION

For the reasons set forth below, defendant Rachel Webb's Motion to Dismiss (Doc. No. 34) and State Defendants' Motion to Dismiss Amended Complaint (Doc. No. 38) are hereby GRANTED.

It is so ordered.

The Clerk shall close this case.

Dated this 13th day of March 2009, at Hartford, Connecticut.

```
                    _____/s/ AWT_____
                       Alvin W. Thompson
                    United States District Judge
```

-22-